**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GAYLE K. DUDOIT<br>1660 Haleloke Street<br>Hilo, Hawaii 96720<br><br>v.<br><br>HON. RYAN MCCARTHY<br>Secretary of the Army<br>101 Army Pentagon,<br>Washington, DC 20310-0101 | )<br>)<br>)<br>)<br>)    CASE NO. _____<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

**(APA Review of Final Decision of the Army Board for Correction of Military Records)**

**JURISDICTION AND VENUE**

1.      This action seeks review of the final decision of the Army Board for Correction of

Military Records (ABMCR), dated May 09, 2019[1] denying Plaintiff's application to correct her

Army records. The ABCMR's decision is final agency decision under the Administrative

Procedure Act (APA), 5 U.S.C. § 701 *et seq.*

2.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331,

federal question jurisdiction. Plaintiff raises claims under federal statutes and Department of the

Army regulations.

---

[1]      The ABCMR also issued a decision on September 25, 2015, that is within the statute of
limitations.  Plaintiff does not waive her right to judicial review of that decision. *See Clifton Power
Corp. v. F.E.R.C.*, 294 F.3d 108, 110 (D.C. Cir. 2002) ("Instead, the party that had sought
administrative reconsideration may, if reconsideration is denied, challenge that denial as well as
the agency's original order by filing a timely petition for review of both orders.").

3.      The Acts of Congress upon which federal question jurisdiction rests are 10 U.S.C. §

1552, *et seq.*, which authorizes and governs the ABCMR.  Under the APA, the Court may set

aside decisions of the ABCMR that are arbitrary, capricious, unsupported by substantial

evidence, or otherwise contrary to law or mandatory procedure.

4.      This Court has personal jurisdiction over the parties pursuant to 5 U.S.C. § 702 and 10

U.S.C. § 628.

5.      Venue in this Court is proper under 5 U.S.C. § 703 and 28 U.S.C. § 1391 *et seq*.

## THE PARTIES

6.      Plaintiff, Gayle K. Dudoit, a United States citizen, is a former Army Reserve Social

Work Officer.  She resides at the address provided in the caption above.

7.      Defendant, the Honorable Ryan McCarthy, is the Secretary of the Army. He is the head of

the Department of the Army.  He resides at the address provided in the caption above. The ABCMR

acts on behalf of the Secretary of the Army.

## STATUTE OF LIMITATIONS AND
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      On or about June 24, 2016, Plaintiff filed an application with the ABCMR, requesting

several records corrections.

9.      On May 9, 2019, the ABCMR issued a final decision in which it considered and denied

the merits of Plaintiff's claims.

10.     Plaintiff has exhausted her administrative remedies and this matter is ripe for judicial

review.

11.     Pursuant to 28 U.S.C. § 2401(a), Plaintiff's claims must be made within six years of

accrual.

12.     Plaintiff's clams accrued on May 9, 2019, when the ABCMR issued its final decision on the merits of the claims presented.

13.     Plaintiff's claims are timely before this Court.

## STATEMENT OF FACTS

14.     Plaintiff initially enlisted in the US Army Reserve under the Delayed Entry Program on June 6, 1974 and over the course of her long career, accrued 18 years, 6 months and 11 days of total service creditable toward non-regular retirement, including 5 years, 3 months and 23 days of active duty.

15.     On December 14, 2000, Plaintiff was appointed as an officer in the Army Reserve as a First Lieutenant social worker.

16.     On February 12, 2004, Plaintiff was appointed as the Army Substance Abuse Program (ASAP) unit prevention leader.

17.     Plaintiff was again promoted to captain O-3 on June 10, 2004.

18.     In 2008, Plaintiff worked as a social worker attached to the 9th Mission Support Command located in Hawaii.  She assumed command of Detachment 2 of the 1984th U.S. Army Hospital effective August 2, 2008.

19.      On or about August 14, 2008, Plaintiff was notified that she had allegedly tested positive for tetrahydrocannabinol (THC) after a unit-wide urinalysis test was conducted on August 3, 2008. The notice alleged that Plaintiff's sample contained 30 nanograms per milliliter.  The approved cutoff was 15 nanograms, according to the notice.

20.     The next day, Plaintiff sought independent urinalysis testing, which tested negative for any illegal substances, including THC.

21.     On May 2, 2009, the 9th Mission Support Command convened a board of officers or

"Board of Inquiry (BOI)" under Army Reg. 135-175 to consider Plaintiff for involuntary

separation.  The stated basis for convening the BOI was the positive urinalysis test and for

"conduct unbecoming of an officer" related to the test.

22.     Before and during the hearing, Plaintiff denied ever ingesting any prohibited substance.

No witnesses testified as to seeing Plaintiff ingest any illegal substance.  Evidence was submitted

that that chain of custody of Plaintiff's sample was broken and that procedures designed to

ensure the integrity of the collection and testing were not followed.

23.     Ultimately, the BOI found that "the allegation of personal misconduct, specifically, the

use of marijuana by the Respondent, Gayle K. Dudoit, is supported by a preponderance of the

evidence."  The board also found that "the allegation of conduct unbecoming of an officer

specifically, the use of marijuana by the Respondent, Gayle K. Dudoit, is support by a

preponderance of the evidence."

24.     The BOI recommended that Plaintiff be separated from service with an under Other Than

Honorable (OTH) conditions discharge characterization.

25.     On July 14, 2009, Brigadier General Alexander I. Kozlov, the Board of Officers

Appointing Authority and then commander of the 9th Mission Support Command, upon

consideration of the board proceedings and on the advice of his Staff Judge Advocate,

recommended that Plaintiff's separation be suspended for a period of 12 months "with the

suspension contingent upon CPT Dudoit submitting to involuntary urinalysis exams and alcohol

breathalyzer tests every month and meeting the appropriate standards of conduct and duty

performance."  BG Kozlov continued to state, "I believe CPT Dudoit is worthy of retention and

knows the risks associated with drug abuse and addition, and this behavior is completely opposite of her military profession and career goals."

26.     Despite BG Kozlov's recommendation and his Staff Judge Advocate's (SJA) opinion that he could suspend Plaintiff's separation, an SJA from higher in the command disagreed and returned the separation packet.  BG Kozlov's SJA then prepared a decision memo for BG Kozlov to approve the BOI findings without a suspended separation.

27.     On November 30, 2009, the Reviewing Authority, Major General Michael J. Terry, recommended that Plaintiff's elimination be approved with an OTH characterization.

28.     From the date of the BOI hearing until November 3, 2010, Plaintiff continued to attend battle assembly and perform her duties as a Medical Services Officer.  She underwent a urinalysis on July 10, 2010, which came back negative.

29.     On November 3, 2010, Plaintiff was separated from the US Army Reserve with an OTH type of discharge.

30.     At the time of her discharge, Plaintiff had 18 years, 6 months, and 11 days of time creditable toward non-regular retirement.

31.     Subject to exceptions not applicable in Plaintiff's case, reserve members who perform at least 20 years of qualifying service are entitled, upon application, to non-regular or reserve retired pay at age 60.  10 U.S.C. § 12731.

**First Army Discharge Review Board Application**

32.     On or about June 12, 2012, Plaintiff, through previous counsel, submitted an application for records review to the Army Discharge Review Board (ADRB).

33.     The ADRB, established pursuant to 10 U.S.C. § 1553 has authority to review the type of discharge given and change, correct, or modify any discharge or dismissal, and to issue a new discharge.

34.     The application requested that the ADRB: (a) vacate her discharge from the Army Reserve; (b) reinstate her in as a captain in the Medical Services Corps with promotion to major; (c) remove the OTH characterization of service; (d) remove all service record entries and references related to the adverse discharge; and (e) restore all pay, allowances, entitlements, rights, and privileges which were affected by the adverse discharge.

35.      On or about January 7, 2013, Plaintiff was notified that the ADRB had denied her application.

36.     The ADRB's case report and directive indicated that the analyst assigned to the case had recommended Plaintiff's discharge be upgraded to honorable.  The analyst further noted that Plaintiff's request for reinstatement, restoration of pay, and records corrections were outside of the ADRB's purview and indicated that such relief was appropriate for consideration by the ABCMR.

37.     Despite the analyst's recommendation, the ADRB board members denied relief.

**Second ADRB Application**

38.      On or about July 4, 2014, Plaintiff, through previous counsel, submitted an application to the ADRB requesting a personal hearing.

39.     As part of the application, Plaintiff's counsel submitted a memorandum and supporting exhibits for the panel's consideration.

40.     The memorandum asserted several legal arguments in support of Plaintiff's request for relief.

41.    First, counsel argued that policies and regulations designed to ensure fundamental
fairness and due process of law were not followed in Plaintiff's BOI.  Among other points,
counsel argued that the urinalysis sample collection and temporary storage procedures were not
followed.

42.    Second, counsel argued that the BOI's findings were unduly harsh when weighed against
Plaintiff's entire service record.

43.    The ADRB personal-appearance hearing was conducted on September 22, 2014.

44.    By memorandum dated September 25, 2014, the ADRB notified Plaintiff that the panel
had determined relief was warranted and forwarded the ADRB's case report and directive which
contained the board's rationale.

45.    The case report and directive document evidently was substantially drafted by an analyst,
perhaps in advance of the hearing, who recommended partial relief in the form of an upgrade to a
general, under honorable conditions characterization.

46.    Despite the analyst's recommendation for partial relief, much of the "discussion and
recommendation" section contained rationale that appeared to support a full denial of the
application.  Among other examples, the analyst opined that Plaintiff's "quality of service was
not consistent with the Army's standards for acceptable personal conduct and performance duty
by Army Reserve Officers.  It brought discredit on the Army Reserve and was prejudicial to
good order and discipline. By her moral or professional dereliction and conduct unbecoming an
officer, the applicant diminished the quality of her service below that meriting an honorable
discharge."

47.     The analyst further stated, "There is no evidence in the record, nor has the applicant provided any evidence, to support the request that the reason for her discharge was improper or inequitable."

48.     Despite these discussion points, the analyst concluded "In view of the foregoing, the characterization of the discharge is too harsh and as a result, it is inequitable. The analyst recommends the Board grant partial relief in the form of an upgrade of the characterization of service to general, under honorable conditions."

49.     The analyst also stated that "There is no evidence in the record, nor has the applicant produced any evidence to support the contention that her BOI was not conducted per regulatory guidance and that she did not receive due process."

50.     The analyst further noted that the ADRB "is not empowered to reinstate a former service member to military duty. The Board may only change the characterization of service or the reason for discharge."

51.     In contradiction to the analyst's discussion, the ADRB voted to grant full relief in the form of an upgrade of the characterization of service to honorable, and a change to the narrative reason for separation to Secretarial Authority.  The Board's rationale was stated as follows:

> After carefully examining the applicant's record of service during the period of enlistment under review, hearing her testimony, and notwithstanding the examiner's Discussion and Recommendation which follows, the Board determined the discharge is inequitable. The Board found the circumstances surrounding her discharge (i.e., conduct of the urinalysis test, no UCMJ action, court-martial, or OER to document the derogatory information and the conduct of the BOI mitigated the discrediting entry in her service record.

52.     The ADRB cited issues with the urinalysis test and the "conduct of the BOI" as a basis for its decision to grant relief.

**First ABCMR Application**

53.     Shortly after receiving the 2014 ADRB's decision, Plaintiff submitted a *pro se*

application to the ABCMR requesting relief that the ADRB could not grant.

54.     Plaintiff argued that the 2014 ADRB had granted full relief on the rationale that the "The

Board found the circumstances surrounding her discharge (i.e., conduct of the urinalysis test, no

UCMJ action, court martial. or OER to document the derogatory information and the conduct of

the BOI) mitigated the discrediting entry in her service record."

55.     As evidence, Plaintiff provided a copy of the 2014 ADRB's decision, a copy of the

appeal brief and a copy of her service record.

56.     As a request for relief, Plaintiff stated "If granted, I would like to be assigned to my

former unit, Detachment 2, 1984th USAH, and allowed to be promoted to the rank of Major (0-

4) DOR retroactive, which I was denied based on the flagging action connected to my case

allowing me to complete the remaining months I need as a career officer in the U.S Army."

57.     By memorandum dated September 25, 2015, Plaintiff was notified that the ABCMR had

convened on September 24, 2015 and voted to deny her application.  The ABCMR forwarded the

ABCMR's record of proceedings purporting to contain its rationale for denial.

58.     The record of proceedings mischaracterized the 2014 ADRB's findings and basis for

relief by incorrectly asserting, with underline emphasis, that "The ADRB determined the record

confirmed her discharge was appropriate because the quality of her service was not consistent

with the Army's standards for acceptance personal conduct and performance of duty by USAR

officers. It brought discredit on the USAR and was prejudicial to good order and discipline."

However, this portion of the ADRB's decisional document was the analyst's opinion that was

rejected by the board members.

59.     The ABCMR further incorrectly stated that the ADRB granted relief because it found the

characterization of discharge was "too harsh."  This language was also taken from the portion

2014 ADRB's decision authored by the DRB analyst, which the ADRB board members rejected.

60.     The ABCMR decision did not acknowledge that the 2014 ADRB granted relief on

findings related to the conduct of the urinalysis test and the conduct of the BOI.

61.     With respect to Plaintiff's request for reinstatement, the ABCMR restated the facts of

Plaintiff's BOI and subsequent discharge and concluded that "There is no evidence and she

provided insufficient evidence showing her BOI was not conducted in according with regulatory

guidance and she did not receive due process."  The ABCMR continued, "The evidence shows

her administrative discharge was accomplished in compliance with applicable law and regulation

in effect with no indication of procedural errors which would have jeopardized her rights. Absent

a reason to reinstate her, there is no basis for assigning her to a position. Therefore, the requested

relief is not warranted."

62.     Regarding Plaintiff's request for retroactive promotion, the ABCMR stated that Plaintiff

was not promoted because, as a result of the positive urinalysis, she was under suspension of

favorable personnel actions ("flagged").

63.     The ABCMR further opined if Plaintiff were returned to active status, she would not be

eligible for promotion without being again placed onto a promotion list, which cannot occur until

at least one year after the date of their return to active status.  According to the ABCMR, relief

was therefore not warranted.

**Second ABCMR Application**

64.     On or about June 24, 2016, Plaintiff submitted a *pro se* application to the ABCMR for

reconsideration of the board's September 25, 2015 decision.

65.     Plaintiff submitted a lengthy memorandum in support of her application that raised
several arguments (styled as "Items") and contained numerous pieces of supporting
documentation.

66.     In relevant part, Plaintiff argued that the BOI's findings and recommendation was
disproportionately weighed toward the Government's evidence regarding the sufficiency of the
positive urinalysis test.

67.     In support of her argument, Plaintiff proffered post-BOI, post-separation evidence
provided by her unit commander, Lieutenant Colonel Asahara as a basis for granting relief.  In a
May 16, 2013 letter, LTC Asahara stated that "review of the proper securing of specimens noted
breaks in the chain of evidence custody . . . . The urinalysis for the day should be nullified.
Proper storage was an issue."

68.     Plaintiff also argued that the previous 2015 ABCMR decision relied upon a "false
statement" by the ADRB's analyst.  In effect, Plaintiff argued that the ABCMR based its
decision on rationale that written by the ADRB's analyst but was rejected by the ADRB panel
members.  Plaintiff asserted that the ADRB had actually granted relief based on a finding that
"the circumstances surrounding her discharge (i.e. conduct of the urinalysis test, no UCMJ
action, court-martial or OER to document the derogatory information and the conduct of the
BOI) mitigated against the discrediting entry in her service record."

**2019 ABCMR Decision**

69.     By memorandum dated May 9, 2019, the ABCMR notified Plaintiff that the Board had
reconsidered her case and had denied her requested relief.  The memorandum stated that the
decision was final and because the application had been reconsidered, the Board would not

reconsider the same matter unless a request is "supported by relevant materials not previously presented to or considered by the Board."

70.     Enclosed with the memorandum was a record of proceedings that restated Plaintiff's requested relief, listed documents considered by the Board, and restated the facts of the case.

71.     The Board's explanation for denying Plaintiff's application is contained in a single paragraph:

> After review of the application and all evidence, the Board determined there is insufficient evidence to grant relief. The Board considered the applicant's contentions and prior request for relief. The Board agreed the evidence does not support providing any further relief than the honorable discharge characterization which she was previously granted; all other requested relief does not have merit.

### CLAIM FOR RELIEF

**The ABCMR's 2019 decision is arbitrary, capricious, contrary to law, and unsupported by substantial evidence**

72.     The preceding paragraphs are incorporated herein by reference.

73.     The 2019 ABCMR failed to consider non-frivolous arguments Plaintiff placed before it. Plaintiff asserted arguments that the BOI was not based on substantial evidence, that it was tainted by procedural irregularities and that Plaintiff's unit commander, according to post-separation evidence, was unaware of the problems with the urinalysis or would have nullified the results.

74.     The 2019 ABCMR decision entirely failed to consider important aspects of the problem. The 2019 ABCMR failed to consider, among other things, evidence and arguments related to: urinalysis irregularities; Plaintiff's unit commander's post-separation evidence that the urinalysis results should have been nullified; the lack of favorable witnesses at the BOI despite their availability; the 2014 ADRB's decision to grant relief based upon findings of urinalysis irregularities and the conduct of the BOI; and evidence of the area commander's attempt to

suspend Plaintiff's discharge contingent upon random urinalyses, with which Plaintiff complied and passed.

75.    The 2019 ABCMR failed to respond to favorable evidence that could have supported a different decision.  The ABCMR failed to sufficiently respond to evidence of urinalysis regularities,  Plaintiff's unit commander's post-separation evidence that the urinalysis results should have been nullified, the 2014 ADRB's decision to grant relief based upon findings of urinalysis irregularities and the conduct of the BOI, and favorable evidence related to area commander's attempt to suspend Plaintiff's discharge contingent upon random urinalyses, with which Plaintiff complied and passed.

76.    The 2019 ABCMR's decision is not supported by substantial evidence.  In merely approving of the BOI's findings without any depth of review, the 2019 ABCMR was not supported by substantial evidence.

## REQUEST FOR RELIEF

Wherefore, Plaintiff respectfully requests that the Court grant the following relief:

(A)    Hold unlawful in their entirety and set aside the ABCMR's 2015 and 2019 decisions;

(B)    Enter judgment in favor of Plaintiff on all counts of this complaint;

(C)    Remand the matter to the ABCMR for further actions in accordance with the Court's findings, decision, and order;

(D)    Upon proper application, award Plaintiff attorney fees under the Equal Access to Justice Act; and

(E)    Award such other relief as the Court deems appropriate.

Respectfully submitted,

*/s/Brian D. Schenk*

Brian D. Schenk
(MN #0391577)
Midwest Military & Veterans Law, PLLC
310 4th Ave. S, Ste 5010
Minneapolis, MN 55415
Ph:  (202) 557-6570
Fax: (612) 206-3170
Email:  brian@militaryandveteranslaw.com

Dated:  March 18, 2020