**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **GAYLE K. DUDOIT,**<br><br>***Plaintiff,***<br><br>**v.**<br><br>**ADAM TELLE, Acting Secretary of the Army,**<br><br>***Defendant.***[1] | Civil Action No.<br>1:20-cv-766-MAU |

**MEMORANDUM OPINION**

Plaintiff U.S. Army Reserve Captain Gayle K. Dudoit ("Capt. Dudoit" or "Plaintiff") brings this suit against Defendant Acting Secretary of the Army Adam Telle ("Defendant," "the Reserve," or "the Army"), alleging the Army violated the Administrative Procedure Act in connection with Plaintiff's 2010 separation from the Reserve. Before the Court are Defendant's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment. ECF Nos. 18, 20.[2] For the reasons set forth below, both motions are **GRANTED in part and DENIED in part**.

**FACTUAL SUMMARY**

## I. Regulatory Background

Capt. Dudoit's separation from the U.S. Army Reserve involved three Army boards: (i) a Board of Inquiry ("BOI"); (ii) the Army Discharge Review Board ("ADRB"); and (iii) the Army Board for Correction of Military Records ("Correction Board" or "the Board").

---

1 Pursuant to Federal Rule of Civil Procedure 25(d), the current Defendant has been substituted for his predecessor.

2 All citations are to the page numbers in the ECF headers, except for the cites to the Administrative Record, which are to the AR page stamp on the bottom right side of each page.

Before separation, an officer may convene a BOI to assess whether she should be retained. 10 U.S.C. § 14903(a). The BOI's decision, however, is a recommendation only. § 14903(c). The officer's separation authority makes the ultimate decision as to whether to accept or reject the BOI's recommendation. Army Reg. 135-175 ¶ 2-3(a).[3]

After separation, an officer may seek review through the Army Review Boards Agency. This agency houses several boards, including the ADRB and the Correction Board. Although these two boards share similar responsibilities, they differ in two significant ways. First, the uniformed-staffed ADRB's scope of relief is narrower. The ADRB may change only the characterization, reason, and authority for the discharge. *See* § 1553(b)(1). The civilian-staffed Correction Board has greater authority as it may "correct an error or remove an injustice" in any military record. § 1552(a)(1). Its scope of relief includes reinstatement, restoration of rank, and service credit. *See* §§ 1552(a)–(d). Second, the Board sits above the ADRB and serves as the final level of administrative review. § 1552(a)(4)(A).

## II. Factual Background

### A. Discharge

Capt. Dudoit served as the Executive Officer of Detachment 2, 1984th U.S. Army Hospital, U.S. Army Reserve, in Hawaii. AR 244. On August 3, 2008, she submitted a specimen for a routine unit urinalysis. *Id.* at 185. Eleven days later, a human resources officer notified Capt. Dudoit's unit commander, Lieutenant Colonel Elizabeth Asahara, that Capt. Dudoit tested positive for 30 ng/mL of tetrahydrocannabinol ("THC"), twice the Army's 15 ng/mL limit. *Id.* at 100–01. The HR officer simultaneously instructed LTC Asahara to initiate immediately a separation action

3 The operative version of Army Regulation 135-175 is the February 28, 1987 version.

against Capt. Dudoit pursuant to the Army's Substance Abuse Program, Army Regulation 600-85.[4] *Id.* at 100 (citing Army Reg. 600-85 ¶ 2-10). Beginning on August 15, 2008, Capt. Dudoit proceeded to submit results from five subsequent drug tests. *Id.* at 103–04. All were negative for THC. *Id.* at 168.

Approximately two months later, Capt. Dudoit's commanding general, Brigadier General Alexander Kozlov, charged Capt. Dudoit with alleged illegal drug use and conduct unbecoming an officer. *Id.* at 159. He ordered her to explain why she should be allowed to remain in the Army Reserve given the initial positive test result. *Id.* Capt. Dudoit elected to appear before a BOI to seek its independent recommendation regarding Brig. Gen. Kozlov's allegations. *Id.* at 163. Capt. Dudoit's BOI convened on May 2, 2009. *Id.* at 116. The BOI heard testimony about the collection of the specimen and chain of custody. *Id.* at 125–27. The BOI also heard testimony from the unit prevention leader ("UPL") and the unit observer, the two Reservists who conducted the urinalysis. *Id.* The unit observer testified that both she and Capt. Dudoit were present when the UPL sealed Capt. Dudoit's specimen with tamper-proof tape. *Id.* at 127. The UPL testified that she then placed the specimen in a locked filing cabinet. *Id.* at 126, 141. Although the UPL testified that she had not always accounted for the location of the filing cabinet's key, the specimen showed no signs of tampering, as the tamper-proof tape on Capt. Dudoit's sample was intact just prior to testing. *Id.* at 141–42.

For her part, Capt. Dudoit called several witnesses, including LTC Asahara and a clinical psychologist with the Army Substance Abuse Program. *Id.* at 127–33. Both witnesses testified that they had not seen Capt. Dudoit exhibit any substance abuse issues and recommended that the Army retain her. *Id.*

---

[4] The operative version of Army Regulation 600-85 is the March 24, 2006 version.

The BOI found both allegations from Brig. Gen. Kozlov were substantiated and recommended separation with an other-than-honorable characterization. *Id.* at 109, 111. On July 14, 2009, Brig. Gen. Kozlov approved the BOI's findings and recommendation. *Id.* at 179. Brig. Gen. Kozlov, however, recommended the discharge be suspended for twelve months conditioned on Capt. Dudoit participating in future drug testing and engaging in no further misconduct. *Id.* That November, however, Brig. Gen. Kozlov's superior rejected his recommendation, and Capt. Dudoit was subsequently discharged under other-than-honorable conditions effective December 1, 2010. *See id.* at 545. At the time of her discharge, Capt. Dudoit had satisfied 18 years, 6 months, and 11 days out of the 20 years' service needed for her to qualify for non-regular retired pay. *Id.* at 77; *see* § 12731(a)(2).

**B. ADRB Application and Appeal**

Following her discharge, Capt. Dudoit filed two applications with the ADRB. In her June 2012 ADRB application, Capt. Dudoit sought (i) vacatur of the discharge, (ii) removal of the other-than-honorable characterization, (iii) reinstatement in the Reserve, (iv) removal of the drug-abuse separation documents, and (v) restoration of pay and entitlements. AR 750. Capt. Dudoit focused on irregularities in the urinalysis, such as the fact that the samples were kept in a regular locked filing cabinet as opposed to a cabinet equipped with a full-height metal hasp and padlock with two-key control and an access log, which is what was required by Army regulations. *See id.* at 758 (citing Army Reg. 600-85 app. E-10–E-12). Capt. Dudoit also submitted a January 4, 2011 memorandum from LTC Asahara stating that the unit lacked proper storage facilities for the specimen. *Id.* at 923. The ADRB voted to deny her application on January 7, 2013, determining that the discharge was "both proper and equitable." *Id.* at 741–44.

In July 2014, Capt. Dudoit filed a second application with the ADRB. *Id.* at 542. Among other things, Capt. Dudoit emphasized that the Army failed to establish a chain of custody over the filing cabinet key. *See id.* at 557–58. Capt. Dudoit included another letter from LTC Asahara, this one from May 2013, stating that the "breaks in the chain of evidence custody" counseled that she should have "nullified" the urinalysis. *Id.* at 540 (LTC Asahara: "If I knew what I know now[,] I would have voided the entire collection."). Capt. Dudoit also submitted an August 2013 letter from LTC Dennis McCoola, Detachment 2's commander up until April 2004. LTC McCoola stated that the August 2008 urinalysis appeared to violate Army Regulation 600-85's storage and physical security requirements. *Id.* at 211–12. LTC McCoola cited three deficiencies with the filing cabinet in which Capt. Dudoit's specimen was stored: the absence of a metal hasp, the lack of a chain of custody for the key, and the cabinet's placement in a common area. *Id.* He further suggested that LTC Asahara's failure to conduct a "commander's inquiry," possibly because of her unfamiliarity with Army Regulation 600-85, may have prevented the discovery of the collection and storage discrepancies. *Id.* at 212. LTC McCoola said such an inquiry would likely have led LTC Asahara to invalidate the test results. *Id.*

The ADRB granted Capt. Dudoit full relief within its authority in September 2014, upgrading her discharge to "Honorable" and changing the narrative reason to "Secretarial Authority." *Id.* at 86; *see* Army Reg. 635-200 ¶ 15-1 (prescribing "Secretarial Plenary Authority" as appropriate "when no other provision of this regulation applies"). The ADRB noted that "notwithstanding the examiner's Discussion and Recommendation," the discharge was "inequitable" because of "the circumstances surrounding" it—namely, the manner in which Reserve personnel conducted the urinalysis test, Capt. Dudoit's otherwise positive record, and the procedural errors during the BOI. AR 86. Because of its statutory limits, however, the ADRB did

not address Capt. Dudoit's requests regarding the separation authority, reentry code, or grade. *See id.* at 91; § 1553(b)(1).

**C. Application and Appeal to the Correction Board**

On November 7, 2014, Capt. Dudoit appealed to the Correction Board, requesting reinstatement and a retroactive promotion to Major. *See* AR 289. Capt. Dudoit argued her case "contained errors in both propriety and equity." *Id.* On September 25, 2015, however, the Correction Board denied her application. *Id.* at 276. The Correction Board concluded there was "no evidence and [Capt. Dudoit] provided insufficient evidence" that the BOI denied her due process or departed from regulatory guidance. *Id.* at 275. The Board further stated that Capt. Dudoit's separation "was accomplished in compliance with applicable law and regulation in effect with no indication of procedural errors which would have jeopardized her rights." *Id.* The Correction Board also denied her a promotion on the ground that an officer removed from active status before a promotion is final is removed from the promotion list and cannot be reinstated absent a new selection board. *Id.*

Capt. Dudoit appealed to the Correction Board again in June 2016. *Id.* at 46. This time, she alleged, among other things, procedural and evidentiary failures during the BOI hearing. *See id.* at 53–61. Nearly three years later, on March 20, 2019, the Correction Board denied her appeal in a one-paragraph decision. *Id.* at 43.

**PROCEDURAL HISTORY**

On March 18, 2020, Capt. Dudoit brought this suit under the Administrative Procedure Act ("APA"). ECF No. 1 ¶ 1. She argued that the Correction Board's 2019 decision was arbitrary, capricious, contrary to law, and unsupported by substantial evidence. *Id.* ¶¶ 72–76. Shortly after she filed suit, the Parties jointly moved the Court to remand the case to the Board for further

reconsideration. ECF No. 7. The District Court granted the motion and adopted the Parties' proposal verbatim, ordering the Correction Board to:

> [F]ully consider and address the issues raised in Plaintiff's complaint at paragraphs 73-75, including but not limited to her claims that:
>
> 1. The Board of Inquiry lacked substantial evidence to support its findings;
> 2. There were procedural irregularities at the Board of Inquiry (including lack of favorable witnesses despite their availability);
> 3. There were irregularities in the urinalysis conducted on Plaintiff; and
> 4. Plaintiff's unit commander was unaware of problems with the urinalysis conducted on Plaintiff, otherwise [s]he would have nullified the results of the urinalysis.[5]
>
> The [Correction Board] will also fully consider during its review and address in its recommendation:
>
> 1. The 2014 Army Discharge Review Board ('ADRB') decision to grant relief based on findings of urinalysis irregularities and conduct of the Board of Inquiry; and
> 2. Evidence of the area commander's attempt to suspend Plaintiff's discharge contingent upon her submitting to random urinalysis testing.
>
> In addition to addressing the existence of legal or factual error for all remand items, the [Correction Board] will address whether any remand item, individually or collectively, constitutes an injustice necessitating correction.

ECF No. 9 at 1–2 ("Remand Order").

On November 13, 2020, the Board again denied relief. AR 1–15. This is the decision under review. Capt. Dudoit subsequently amended her Complaint, arguing the Board: (i) issued a decision that was arbitrary, capricious, contrary to law, and unsupported by substantial evidence ("Count I"); (ii) failed to adequately consider the reasoning behind the 2014 ADRB decision in its own 2020 decision ("Count II"); and (iii) failed to address whether the remand items individually

[5] The Parties and the District Court refer to the unit commander using male pronouns, but this appears to be an error. ECF Nos. 7, 9. Elsewhere, the Parties refer to Capt. Dudoit's unit commander, LTC Elizabeth Asahara, using female pronouns. *E.g.*, ECF No. 18-1 at 23; ECF No. 20-1 at 19. Thus, the Court presumes "unit commander" refers to LTC Asahara.

or collectively amounted to an injustice warranting correction ("Count III"). ECF No. 13 at 22–27. The Parties have filed cross-motions for summary judgment. ECF Nos. 18, 20.

**STANDARD OF REVIEW**

The APA authorizes a reviewing court to set aside an agency action where it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The scope of that review "is narrow and a court is not to substitute its judgment for that of the agency," whose action is "entitled to a presumption of regularity." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971). An agency need only have examined the relevant data and articulated an explanation reflecting a "rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43. The agency's decision need not "be a model of analytic precision," and the court will uphold one of "less than ideal clarity if the agency's path may reasonably be discerned." *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (citing *Bowman Transp. v. Arkansas-Best Freight Sys.*, 419 U.S. 281, 286 (1974)).

The Court reviews a decision of the Correction Board under an "'unusually deferential application of the arbitrary or capricious standard'" of the APA. *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)). This is because Congress authorized the Secretary of the Army to act through a civilian board whenever he "considers it necessary to correct an error or remove an injustice" in a service record. *See* § 1552(a)(1). The discretionary scope of that grant "substantially restrict[s] the authority of the reviewing court to upset the Secretary's determination." *Kreis*, 866 F.2d at 1514 (citation modified) (citing § 1552(a)(1)).

Against this statutory backdrop, the Court's task is to ensure the Correction Board's decision "minimally contain[s] a rational connection between the facts found and the choice made." *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997) (citing *State Farm*, 463 U.S. at 43). A court does not substitute its own judgment for that of the Board. *See, e.g.*, *Kreis*, 866 F.2d at 1511 ("The Constitution vests '[t]he complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force' exclusively in the legislative and executive branches." (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973))). An agency decision fails, however, if it is "utterly unreviewable and simply lacks reasons that a court can measure against the arbitrary or capricious standard of the APA." *Coburn v. McHugh*, 679 F.3d 924, 934 (D.C. Cir. 2012) (quotations and citation omitted). Accordingly, the Court need not defer to a "largely incomprehensible" decision that "lacks any coherence." *Id.* at 926, 934 (citing *Tripoli Rocketry Ass'n v. ATF*, 437 F.3d 75, 77 (D.C. Cir. 2006)).

## ANALYSIS

### I. The Correction Board Failed to Evaluate Whether Any Remand Item, Individually or Collectively, Constituted an Injustice Requiring Correction.

In their joint motion for remand, the Parties requested that the District Court remand the case to the Correction Board to consider six issues. ECF No. 7. In joining in that request, Defendant agreed that: "In addition to addressing the existence of legal or factual error for all remand items, the [Correction Board] will address whether *any* remand item, *individually or collectively*, constitutes an injustice necessitating correction." *Id.* at 2 (emphasis added). The District Court adopted the Parties' language verbatim and ordered the Correction Board to consider the injustice question. ECF No. 9 at 2.

Capt. Dudoit now claims that the Board failed to address this issue on remand. ECF No. 20-1 at 39. Specifically, she argues that the Board failed to address the language of the Remand

Order requiring it "to look beyond 'legal or factual' error to consider these items under an injustice analysis." *Id.* at 40. Defendant makes a half-hearted attempt to defend the Board's analysis, arguing that the Board did adequately fulfill its charge. *See* ECF No. 18-1 at 25; ECF No. 24 at 8, 10–12. The only language to which Defendant points that even comes close, however, is the Board's statement that the "evidence presented [did] not demonstrate the existence of a probable error or injustice." ECF No. 18-1 at 24. This one-line conclusion was simply not sufficient to comply with the Remand Order.

After it considered each of the six discrete remand items, the District Court ordered the Correction Board to also consider whether any of those items, "individually or collectively," constituted an "injustice." ECF No. 9 at 1–2. This is its own, separate charge and clearly not meant to be subsumed in the discussion of the preceding six remand items. *Id.* at 2 ("*In addition to* addressing the existence of legal or factual error for all remand items . . . .") (emphasis added). Moreover, although "injustice" is not defined in the Remand Order, its statutory underpinnings and context within the Order provide a definition. "Injustice" has a predetermined meaning in the context of correction to military records. *See* § 1552(a)(1) (authorizing the Correction Board to "correct an error or remove an injustice"). The term may extend beyond whether something was a legal or factual error. In fact, under the injustice standard, the Board may find that a record correction must be made independent of the presence of error. *See id.* ("correct an error *or* remove an injustice") (emphasis added); *Knehans v. Alexander*, 566 F.2d 312, 318 n.14 (D.C. Cir. 1977) (Robinson, J., dissenting) (defining injustice under § 1552 as "treatment by the military authorities, that shocks the sense of justice, but is not technically illegal" where also not "error" (citing *Reale v. United States*, 208 Ct. Cl. 1010, 1011 (1976))).

Accordingly, it is clear from the Remand Order that, after considering the six enumerated remand items: (i) the Correction Board was required to perform a separate, distinct analysis about injustice; (ii) the Correction Board was required to consider whether any of the remand items constituted an injustice on their own or "collectively"; and (iii) the term "injustice" assumes that any of the other six remand items may not constitute a legal or factual error but that a correction may nonetheless be required.

The Board failed to satisfy this charge. Throughout its three-page analysis, the Board fails to devote any meaningful analysis or consideration to the question of injustice. *See* AR 12–14. In fact, the Board only uses the word twice. The Board includes one mention of "injustice" within its Discussion section to note that the 2014 ADRB "demonstrate[d] by a preponderance of evidence an error or injustice warranting the requested relief." *Id.* at 12. And in its conclusion, the Board adds the boilerplate line on which Defendant relies: that "[t]he evidence presented does not demonstrate the existence of a probable error or injustice." *Id.* at 15. This conclusory statement fails to reflect any analysis or discussion, let alone a meaningful one, about whether any of the other remand items, together or alone, constitute an "injustice."

Defendant awkwardly argues that "[t]here is no evidence that the Board failed to consider whether an injustice necessitated correction here." ECF No. 18-1 at 25. This makes little sense. The Remand Order required the Board to affirmatively "*address*," not simply implicitly "consider," the question of injustice. ECF No. 9 at 2 (emphasis added). Moreover, Defendant is effectively arguing that, in the absence of an explicit statement that something was considered, the Court should presume it was. That argument fundamentally misunderstands an agency's obligation to rationally connect facts with its conclusion. *See Dickson*, 68 F.3d at 1404 (Correction Board decisions must "minimally contain a rational connection between the facts found and the

choice made" (quotation omitted)). Indeed, it is a "'fundamental rule of administrative law' that a court reviewing an agency's decision 'must judge the propriety of [agency] action solely by the grounds invoked by the agency.'" *Poole v. Harvey*, 571 F. Supp. 2d 120, 126 (D.D.C. 2008) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

Because no discernible discussion exists, the Court cannot determine whether the Correction Board considered the injustice question at all. *See Dickson*, 68 F.3d at 1405–06; *Kreis*, 866 F.2d at 1514–15 (holding that a Correction Board decision fails under the APA when it lacks "reason[s] that a court can measure"). Accordingly, the Court grants summary judgment in favor of Plaintiff on Count III. The Court further remands to the Correction Board to consider and address the question of injustice in the Remand Order in the first instance.

## II. The Correction Board's Conclusions Regarding the Urinalysis and LTC Asahara's Statements Were Neither Arbitrary, Capricious, an Abuse of Discretion, nor Contrary to Law.

Capt. Dudoit next claims that the Correction Board's decision regarding the urinalysis was arbitrary, capricious, an abuse of discretion, or contrary to law. ECF No. 20-1 at 31. Capt. Dudoit essentially makes two arguments. First, she argues the Board failed to address additional irregularities in the urinalysis beyond the lack of a filing cabinet hasp. *Id.* at 32. Second, she claims the Board also failed to address whether LTC Asahara, as unit commander, had the authority to invalidate the urinalysis and would have done so in light of those irregularities. *Id.* at 36–37. Defendant argues the Board adequately addressed both. ECF No. 24 at 7–8. Based on a review of the Board's decision, the Board provided a rational connection between the record and its conclusions.

According to Capt. Dudoit, the Board failed to specifically address two irregularities that would compromise the urinalysis sample: that the samples were stored in an unsecured location,

and that Defendant failed to record or control who had possession of the filing cabinet key. *See* ECF No. 20-1 at 32. In its decision, the Board acknowledged that the Reserve should have stored the specimen in a locked filing cabinet with a full-body, metal bar hasp pursuant to Army Regulation 600-85. *See* AR 13. But the Board found that this error did not render Capt. Dudoit's positive test result invalid because the specimen was otherwise secure. *Id.* Indeed, the Board found no indication of tampering. *See id.* (citing Army Reg. 600-85 app. E-11 ("In no case will failure to comply with the provisions of this [standard operating procedure] be used to invalidate an otherwise valid and legally sufficient adverse administrative or disciplinary action.")). The Board further noted that the first subsequent urinalysis Capt. Dudoit took twelve days after the original test did not invalidate the initial positive result. *Id.* The Board, thus, appropriately reasoned that the additional irregularities did not alter Capt. Dudoit's positive urinalysis result.

Capt. Dudoit next argues that the Board failed to grapple with evidence from LTCs Asahara and McCoola showing that LTC Asahara, as unit commander, could and would have nullified the urinalysis. ECF No. 20-1 at 32–35. Regarding whether LTC Asahara could have nullified the urinalysis test, the Remand Order did not require the Board to consider that question. The Board was instead required to consider the claim that "Plaintiff's unit commander was unaware of problems with the urinalysis conducted on Plaintiff, otherwise [s]he *would have* nullified the results of the urinalysis." ECF No. 9 at 1 (emphasis added). As to whether LTC Asahara would have nullified the test, the Board found it "unlikely, though ultimately speculative, that the unit commander would have nullified the results solely on the basis that [Capt. Dudoit's specimen was] stored in a filing cabinet not fitted with a metal hasp bar." AR 13. The Board then weighed that evidence with the other facts in the record such as the absence of tampering, the otherwise secure

storage, and the positive test result itself. *Id.* The Board found that, collectively, the evidence surrounding the specimen's storage outweighed LTCs Asahara and McCoola's statements. *See id.*

Capt. Dudoit takes issue with the Board's characterization of LTC Asahara's claims as "speculative." ECF No. 26 at 8–9. Capt. Dudoit notes that LTC Asahara "was speaking to her own knowledge and authority with clear certainty, not opining." *See id.* at 9 (citing BLACK'S LAW DICTIONARY 668 (3d pocket ed. 2006) (defining "speculative" as "[t]he act or practice of theorizing about matters over which there is no certain knowledge")). But Capt. Dudoit has not identified any error under the applicable deferential standard. Here, the Board did not appear to doubt the veracity of LTC Asahara's statements. The Board instead cast doubt on the certainty of her statement about a theoretical decision she never made five years earlier. Put simply, the Board was skeptical that the LTC Asahara of 2008 would have done what the LTC Asahara of 2013 said she would have done. The record does not contradict this characterization, and the Board's path may reasonably be discerned. *See Dickson*, 68 F.3d at 1404; *Coburn v. McHugh*, 77 F. Supp. 3d 24, 31 (D.D.C. 2014), *aff'd sub nom. Coburn v. Murphy*, 827 F.3d 1122 (D.C. Cir. 2016) ("[P]laintiff's disagreement with [a Board] decision is not a valid basis for this Court to set aside an agency action supported by the record."). The Board's conclusion is, therefore, sufficient under the APA.

Capt. Dudoit also argues that the Board erred because it failed to cite LTC Asahara's 2013 statement. ECF No. 26 at 8. This argument also fails. Even if an agency decision is not a "model of analytic precision," the Court must nevertheless affirm the decision "if the agency's path may reasonably be discerned" by completing "the critical step—connecting the facts to the conclusion." *Dickson*, 68 F.3d at 1404–05 (quoting *Bowman Transp.*, 419 U.S. at 286); *see Albino v. United States*, 78 F. Supp. 3d 148, 165 n.12 (D.D.C. 2015) (discerning the evidentiary basis of a Correction

Board decision even though it did "not specifically identify the evidence on which it relied"). To be sure, the Board never mentions LTC Asahara by name. AR 13. But the Board clearly references LTC Asahara through her role ("unit commander") and by responding to her statement that she would have nullified the urinalysis. *Id.* Accordingly, the Board sufficiently considered the facts before it—a unit commander's later statements, her opinion that she would have nullified the urinalysis, and the otherwise secure storage of the specimen—and connected those facts to its ultimate conclusion on those facts in reaching its decision. *See Dickson*, 68 F.3d at 1404.

Because the Correction Board's decision as to its review of the urinalysis was not arbitrary, capricious, or contrary to law, the Court grants summary judgment in favor of Defendant on Count I.

**III. The Correction Board Adequately Considered the 2014 ADRB Decision.**

Finally, Capt. Dudoit argues the Board failed to adequately address the ADRB's 2014 decision. ECF No. 20-1 at 38. She claims the Correction Board merely parroted the decision instead of engaging with the ADRB's reasoning. *Id.* Defendant disagrees, arguing that the Board adequately reviewed the ADRB's factual findings, reasoning, and limited remedial authority. ECF No. 24 at 9. Because the Board weighed the ADRB's evidence and findings and relied on them to reach its own conclusion, Capt. Dudoit fails to show the Board erred.

The District Court instructed the Board to "fully consider during its review and address in its recommendation . . . [t]he 2014 [ADRB] decision to grant relief based on findings of urinalysis irregularities and conduct of the [BOI]." ECF No. 9 at 2. To examine the 2014 ADRB decision, the Board began by identifying the ADRB's comparatively limited authority. AR 14. The Board then determined that the ADRB likewise found that Capt. Dudoit's discharge was not the result of prejudicial error. *Id.* Rather, according to the Board, irregularities in Capt. Dudoit's urinalysis and

the "conduct of the BOI"[6] "persuaded" the ADRB that her discharge was "overly harsh." *See id.* Consequently, the Board reasoned, the ADRB believed the discharge to be "inequitable" and subsequently upgraded it to honorable status. *See id.* The Board noted that the upgrade was the extent of the ADRB's authority. *Id.* In its own analysis, however, the Board found the BOI did not prejudicially harm Capt. Dudoit because the evidence and testimony presented supported the BOI's findings. *Id.* The Board further determined that Capt. Dudoit's defense counsel called favorable witnesses, some of whom testified about the deficiencies in specimen storage and the chain of custody for the filing cabinet key. *Id.* at 13–14. Under the Remand Order, this was all that was required of the Board. *See* ECF No. 9 at 2.

Capt. Dudoit's argument also fails on the record. She argues that the Board failed to engage with the urinalysis irregularities or LTC Asahara's statement that were key to the ADRB's 2014 decision. ECF No. 20-1 at 39. "Quoting poorly articulated passages from an agency decision is insufficient to demonstrate that the agency's action violated the APA, particularly when the passage is cited in isolation without consideration of the full record." *Hisgen v. Fanning*, 208 F. Supp. 3d 186, 199 (D.D.C. 2016). In the paragraph preceding its discussion of the ADRB, the Board concluded that Capt. Dudoit's contentions regarding insufficient evidence and procedural irregularities at the BOI were outweighed by the record, which showed she was represented by counsel, presented favorable witnesses, and was not prevented from calling others. AR 13–14. Indeed, the Board concluded that the BOI's findings and recommendation were supported by a

---

[6] Among other things, the ADRB concluded the "conduct of the BOI" warranted a discharge upgrade. AR 436. Yet, the ADRB did not explain how the BOI's conduct mitigated the discharge. *See id.* at 430–38. In fact, the ADRB found no evidence to suggest that Capt. Dudoit's BOI was conducted contrary to Army regulations or that she was otherwise deprived of due process. *Id.* at 435. This inconsistency is of no moment, however, as the Correction Board sits independent of the ADRB. *See* 32 C.F.R. § 581.3(g)(2). Moreover, the Correction Board adequately conducted its own analysis of the BOI's conduct and decision.

preponderance of the evidence and that Capt. Dudoit did not show any error materially affecting her rights. *Id.* Just before this, the Board analyzed the urinalysis irregularities and LTC Asahara's memorandum. *Id.* at 13; *see* Section II. Read together, the Board defined the scope of the ADRB's authority, acknowledged the ADRB's findings and the favorable evidence supporting the upgrade, and separately addressed the urinalysis irregularities and LTC Asahara's memorandum. *See* AR 13–15. The Board then noted that the ADRB had found the discharge not improper, consistent with its own conclusion, and denied Capt. Dudoit's request for relief. *See id.* at 12, 14–15. This analysis satisfies the APA. *See Dickson*, 68 F.3d at 1404–05. As such, the Court grants summary judgment in Defendant's favor on Count II.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Cross-Motion for Summary Judgment is **GRANTED** as to Count III and **DENIED** as to Counts I and II. Defendant's Motion for Summary Judgment is **GRANTED** as to Counts I and II and **DENIED** as to Count III. The Court **REMANDS** this case to the Board for further consideration consistent with this opinion.

Date: October 14, 2026

MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE